UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
SEP 02 2016
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

UNITED STATES OF AMERICA, )
)
    Plaintiff, )
)
v. )
) Cause No. 1:16-cr-
DWAYNE S. PEAK, )
) **1 16-cr- 0 1 8 3 SEB -DML**
    Defendant. )

### PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, and James M. Warden, Assistant United States Attorney ("the government"), and the Defendant, DWAYNE S. PEAK ("the Defendant"), in person and by counsel, Mario Garcia, hereby inform the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The following are its terms and conditions:

#### Part 1: Guilty Plea

1. **Plea of Guilty:** The Defendant will waive his right to indictment by grand jury and will plead guilty as charged to the Information, which charges that the Defendant did steal money of the United States, in violation of Title 18, United States Code, Section 641.

2. **Potential Maximum Penalties:** The Information is punishable by a maximum sentence of ten (10) years' imprisonment, a $250,000 fine, and three (3) years' supervised release following any term of imprisonment.

3.  **Elements of the Offense:** To sustain the offense to which the Defendant is pleading guilty, the government must prove the following elements beyond a reasonable doubt:

   a.  That the subject money belonged to an agency of the United States;

   b.  That the money had a value in excess of $1,000;

   c.  That the Defendant stole, purloined, or converted that money to the Defendant's own use; and

   d.  That the Defendant did so with the intent to deprive the United States agency of the use or benefit of that money.

## Part 2: General Provisions

4.  **Sentencing Court's Discretion Within Statutory Range:** The Defendant agrees and understands that: (A) the Court will use its discretion to fashion a sentence within the statutory range set forth above; (B) the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range; (C) the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range; (D) the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature; (E) the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court; and (F) by pleading "Guilty", the Court may impose the same punishment as if the Defendant had plead "Not Guilty", had stood trial and been convicted by a jury.

5.  **Sentencing Court Not Bound by Guidelines or Recommendations:** The Defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of the Defendant's sentence is within the

discretion of the Court. The Defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to impose a sentence outside of the advisory sentencing guideline range for any reason, then the Defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

6. **Plea Agreement Based on Information Presently Known:** The Defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the government. The government agrees to not bring other criminal charges against the Defendant with respect to the circumstances surrounding the matters charged in the Information based on information currently known to the United States Attorney for the Southern District of Indiana.

7. **No Protection From Prosecution for Unknown or Subsequent Offenses:** The Defendant acknowledges and agrees that nothing in this agreement shall protect the Defendant in any way from prosecution for any offense not specifically covered by this agreement, or not known to the United States Attorney for the Southern District of Indiana at this time. The Defendant further acknowledges and agrees that nothing in this agreement shall protect the Defendant in any way from prosecution for any offense committed after the date of this agreement.

8. **Rights Under Rule 11(b), Fed.R.Crim.P.:** The Defendant understands that the government has the right, in a prosecution for perjury or false statement, to use against the Defendant any statement that the Defendant gives under oath during the guilty plea colloquy. The Defendant also understands that the Defendant has the right: (A) to plead not guilty, or having already so pleaded, the right to persist in that plea; (B) to a jury trial; (C) to be

represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses. The Defendant also understands that the Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge, the right to appeal the conviction on such charge to a higher court. The Defendant understands that if the Court accepts this plea of guilty, the Defendant waives all of these rights.

## Part 3: Sentencing Recommendation

9. **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):** The parties have **not** agreed upon a specific sentence. The parties reserve the right to present evidence and arguments concerning what they believe to be the appropriate sentence in this matter.

   a. **Government's Recommendation:** The government will recommend a sentence within the advisory sentencing guidelines range consistent with the stipulations stated herein.

   b. **Defendant's Recommendation:** The Defendant is free to request whatever sentence he deems appropriate not inconsistent with the sentencing guidelines calculation to which he has stipulated herein.

10. **Supervised Release:** Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a term of supervised release to follow any term of imprisonment in this case, the duration of any term of supervised release, and the terms and conditions of the release.

---

[1]Title 18, U.S.C. §§ 3141-3156, Release and Detention Pending Judicial Proceedings.

11. **Conditions of Supervised Release:** The parties understand and agree that the Court will determine which standard and special conditions of supervised release to apply in this case. The parties reserve the right to present evidence and arguments concerning these conditions.

12. **No Appeal of Supervised Release Term and Conditions**: As discussed in greater detail below, the parties' reservation of the rights to present evidence and arguments to the Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified below, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

## Part 4: Monetary Provisions and Forfeiture

13. **Mandatory Special Assessment:** The Defendant will pay a total of $100 on the date of sentencing or as ordered by the Court to the Clerk, United States District Court, which amount represents the mandatory special assessment fee imposed pursuant to 18 U.S.C. § 3013.

14. **Fine:** The matter of any fine is left to the discretion of the Court.

15. **Restitution:** The Defendant will be ordered to make full restitution to the United States in an amount to be determined by the Court.

16. **Obligation to Pay Financial Component of Sentence:** If the Defendant is unable to pay any financial component of the Defendant's sentence on the date of sentencing, then the Defendant agrees that the payment of the financial component shall be a condition of supervised release as well as an ordered payment through the Inmate Financial Responsibility Program of the Federal Bureau of Prisons, if the Defendant is incarcerated. The Defendant will have a continuing obligation to pay the financial component of the sentence. The Defendant further agrees that as of the date of filing this Plea Agreement the Defendant will provide all

requested financial information to the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Indiana for use in the collection of any fines and restitution imposed by the Court and authorizes the Financial Litigation Unit to obtain credit reports relating to the Defendant for use in the collection of any fines and restitution imposed by the Court.

### Part 5: Factual Basis for Guilty Plea

**17.** The parties stipulate and agree that the following facts establish a factual basis for the Defendant's plea of guilty to the offense set forth in Paragraph One, above, and that the government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to trial. The following information is only a summary of the government's evidence. This Plea Agreement is not intended to foreclose the presentation of additional evidence and the parties reserve the right to present additional evidence at the time of sentencing. The Defendant acknowledges and admits all of the facts and allegations charged in the Information and all of the elements of the offense charged in the Information as delineated in paragraph 3, above. The summary of the evidence is as follows:

### INTRODUCTION

This case involves the use of stolen identifying information to file false federal income tax returns in order to obtain fraudulent tax refunds. The subject of this investigation, DWAYNE S. PEAK (hereafter PEAK), was responsible for establishing bank and credit union accounts in order to receive the fraudulent tax refunds which are believed to have been prepared by other, presently unknown, individuals. PEAK profited from the receipt of the fraudulent tax refunds but also forwarded a portion of the tax refunds on to other individuals. PEAK received a total of 21 fraudulent tax refunds for the 2012, 2013, and 2014 tax years into 6 accounts in his name at 4 separate financial institutions.

## VICTIMS

The victims in this case are the Internal Revenue Service and several individuals whose identities were illegally used to file false tax returns in order to steal funds from the United States government.

## FACTUAL BACKGROUND

Starting in 2013, fraudulent tax refunds started being deposited via ACH to PEAK's checking and savings accounts at Madison County Federal Credit Union, his savings account at PNC Bank, His checking and savings accounts at Independent Federal Credit Union, and his account at Lampco Federal Credit Union. Three of the six accounts in which Peak received fraudulent tax refunds were newly established accounts around the time that they began receiving fraudulent tax refunds. These accounts had very limited deposit activity aside from the receipt of the tax refunds. The proximity in time of the opening dates of these accounts to their first tax refund deposit is shown in the table below:

|  | Date Opened | Date of First Tax Refund Deposit |
|---|---|---|
| PNC Bank Savings Account: | 08/06/2013 | 09/05/2013 |
| Madison County Federal Credit Union - Checking Account: | 02/14/2014 | 02/26/2014 |
| Madison County Federal Credit Union – Savings Account: | 02/14/2014 | 02/26/2014 |

PEAK received statements in the mail from at least one of the four financial institutions where he received fraudulent tax refunds, that financial institution being Independent Federal Credit Union. These account statements were delivered to an address rented by PEAK's then girlfriend where PEAK was known to routinely pick up his mail, including picking up mail from

7

Independent Federal Credit Union. The account statements for each of the six accounts contained detailed descriptions for the tax refund deposits. The most common description shown reads "IRS TREAS 312 / TAX REF" or "IRS TREAS 310 / TAX REF". These descriptions are used for 16 of the 21 tax refund deposits to PEAK's accounts.

PEAK was interviewed by the Chief Executive Officer and Chief Technology Officer of Madison County Federal Credit Union due to concern over the receipt of tax refunds being deposited to his account. PEAK was informed during this interview of deposits intended for other individuals being deposited to his savings and checking accounts. These deposits were further described to PEAK as "treasury" or "fed" deposits but were not referred to as tax refunds. After being asked for a justification for the receipt of these deposits PEAK stated that he prepared tax returns for other individuals but did not elaborate further. The credit union representatives attempted to convince PEAK to allow the four most recently deposited tax refunds to be reversed. He allowed three of the transactions to be reversed but refused to allow the fourth, a refund in the amount of $63,476, to be reversed. PEAK stated that the $63,476 refund was actually related to an EBay business PEAK operated with a partner, that the funds had been discussed with his partner, and that he was going to keep the funds.

An interview of one of the intended recipients of the $63,476 tax refund revealed that they were not involved with the filing of the federal tax refund that resulted in the issuance of the refund and that they were an identity theft victim. The intended recipients filed an affidavit with the IRS relating to the event.

PEAK was later interviewed by IRS – Criminal Investigation Division agents. During this interview PEAK denied knowledge of tax refunds being deposited to his account and at one point stated it wasn't possible to have knowledge of the deposits running through one's own

account. PEAK was informed his bank account had a negative balance at the time it received a $63,000 tax refund deposit and that therefore the entire balance of the account after that deposit was sourced to the tax refund. PEAK denied that the funds came from a tax refund, stated the funds were his life savings, and continued to spend the funds after the interview.

There were several discrepancies between PEAK's statements to the representatives of Madison County Federal Credit Union and the statements he made to IRS agents. These discrepancies are summarized in the table below:

| Topic | Statement made to Credit Union Representatives | Statement made to IRS agents |
|---|---|---|
| EBay business: | Tax refund deposits in 2015 were actually related to an EBay business | PEAK's last involvement with an EBay business was three to five years ago |
| Tax Return Preparation: | Peak helps others prepare tax returns | Peak has never helped others prepare tax returns |
| Source of $63,476 deposit: | The $63,476 tax refund is related to an EBay business | The $63,476 tax refund is actually his life savings |

Interviews to date of the individuals whose identities were used in the filing of the fraudulent tax returns in this scheme reveal they were not involved in the filing of the tax returns and that they are identity theft victims. Some of the individuals' whose identities were stolen for the purpose of this scheme filed affidavits with the Internal Revenue Service in order to claim that they were not responsible for the tax returns filed in their names.

IRS records reveal that PEAK was not the intended recipient of any of the 21 tax refunds deposited to his accounts and that he has not filed a tax refund since at least 2010.

Activity in PEAK's accounts reveal that he actively checked the balances of his accounts and conducted transactions involving the fraudulently received tax refunds, often times shortly after having received the tax refund deposits. PEAK primarily withdrew the proceeds of the fraudulent tax refunds as cash but also wrote checks to another suspected money mule.

PEAK's signature is shown on checks written and cash withdrawals made involving the stolen funds. He also spent a portion of the funds via debit card for personal expenses.

## LOSS AMOUNT

The 21 tax refunds deposited to accounts in Peaks' name resulted in an intended loss to the United States of $259,891.34. Because three of the refunds were returned the actual loss is $238.008.34, which is the appropriate amount of restitution.

## Part 6: Other Conditions

18. **Background Information:** The Defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the Defendant for the purpose of imposing an appropriate sentence. The Defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the Defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

19. **Good Behavior Requirement:** The Defendant agrees to fully comply with all conditions of release imposed by the Court during all stages of this case. If the Defendant fails to fully comply with such conditions, then the government may withdraw from this Plea Agreement.

## Part 7: Sentencing Guideline Stipulations

20. **Guideline Computations:** Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties agree to the Stipulations below. The parties understand and agree that these Stipulations are binding on the parties but are only a recommendation to the Court and that the Court will determine the advisory Sentencing Guidelines applicable in this case. The parties

agree that no stipulation regarding any factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and that such determination will be made by the Court. The 2015 version of the Sentencing Guidelines has been used by the parties to make the stipulations set forth below:

| | |
|---|---|
| **BASE OFFENSE LEVEL:**<br>(U.S.S.G. § 2B1.1(a)(2)) | 6 |
| **LOSS MORE THAN $250,000:**<br>(U.S.S.G. § 2B1.1(b)(1)(G)) | 12 |
| **10 OR MORE VICTIMS**<br>(U.S.S.G. § 2B1.(b)(2)(A)(i)) | 2 |

a. **Acceptance of Responsibility:** To date, the Defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. Based upon the Defendant's willingness to accept a Plea Agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the Defendant should receive a two (2) level reduction *provided* the Defendant satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing. The Defendant timely notified the Government of Defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently. After the Defendant enters a plea of guilty, the government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level. The parties reserve the right to present evidence and arguments concerning the Defendant's acceptance of responsibility at the time of sentencing.

b. **Anticipated Total Offense Level: 17**

## Part 8: Waiver of Right to Appeal

21. **Direct Appeal:** The Defendant understands that the Defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right, and in exchange for the concessions made by the government in this Plea Agreement, the Defendant expressly waives the Defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. The Defendant further agrees that in the event the Court sentences the Defendant to a sentence within the sentencing guidelines range stipulated to herein (Total Offense Level 17), or any lesser sentence, regardless of the Defendant's criminal history category or how the sentence is calculated by the Court, then the Defendant expressly waives the Defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions supervised release and the amount of any fine.

22. **Collateral Attack:** Additionally, the Defendant expressly agrees not to contest, or seek to modify, the Defendant's conviction or sentence or the manner in which either was determined in any proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255. As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the Defendant's offense and explicitly make such an amendment retroactive, the government agrees that it will not assert this waiver as a bar to the Defendant filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2). However, if the Defendant files such a motion, the government reserves the right to oppose the motion on any

other grounds, and reserves the right to assert this waiver as a bar to an appeal from the district court's decision regarding the motion. As concerns the Section 2255 waiver, the waiver does not encompass claims, either on direct or collateral review, that the Defendant received ineffective assistance of counsel.

23. **No Appeal of Supervised Release Term and Conditions:** The parties' reservation of the rights to present evidence and arguments in this Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified above, which includes a waiver of the right to appeal of the length and conditions of the period of supervised release.

### Part 9: Presentence Investigation Report

24. The Defendant requests and consents to the commencement of a presentence investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

25. The Defendant further requests and consents to the review of the Defendant's Presentence Investigation Report by the Court, Defendant's counsel, the Defendant, and the government at any time, including prior to entry of a formal plea of guilty.

### Part 10: Statement of the Defendant

26. By signing this document, the Defendant acknowledges the following:

a. I have received a copy of the Information and have read and discussed it with my attorney. I believe and feel that I understand every accusation made against me in this case. I wish the Court to omit and consider as waived by me all readings of the Information in open Court at all further proceedings.

13

b. I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the Information, and believe and feel that my attorney is fully informed as to all such matters. My attorney has since informed, counseled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.

c. I have read the entire Plea Agreement and discussed it with my attorney.

d. I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

e. Except for the provisions of the Plea Agreement, no officer or agent of any branch of government (federal, state or local), nor any other person, has made any promise of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead "Guilty". I hope to receive probation, but am prepared to accept any punishment permitted by law which the Court may see fit to impose. However, I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading "Guilty" I have saved the government and the Court the expense and inconvenience of a trial. I understand that before it imposes sentence, the Court will address me personally and ask me if I wish to make a statement on my behalf and to present any information in mitigation of punishment.

f. I am fully satisfied with my attorney's representation during all phases of this case. My attorney has done all that anyone could do to counsel and assist me and I fully understand the proceedings in this case against me.

g. I make no claim of innocence, and I am freely and voluntarily pleading guilty in this case.

h. I am pleading guilty as set forth in this Plea Agreement because I am guilty of the offense to which I am entering my plea.

i. I understand that if convicted, a Defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

j. My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within fourteen (14) days of the entry of the judgment in this case. I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

k. My attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation officer, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two level increase in the offense level.

## Part 11: Certificate of Counsel

27. By signing this document, the Defendant's attorney certifies as follows:

a. I have read and fully explained to the Defendant all the accusations against the Defendant which are set forth in the Information in this case;

b. To the best of my knowledge and belief each statement set forth in the foregoing Petition to Enter a Plea of Guilty and Plea Agreement is in all respects accurate and true;

**c.**     The plea of "Guilty" as offered by the Defendant herein accords with my understanding of the facts as related to me by the Defendant and is consistent with my advice to the Defendant;

**d.**     In my opinion, the Defendant's waiver of all reading of the Information in open court, and in all further proceedings, including arraignment as provided in Rule 10, Fed.R.Crim.P., is voluntarily and understandingly made; and I recommend to the Court that the waiver be accepted by the Court;

**e.**     In my opinion, the plea of "Guilty" as offered by the Defendant herein is voluntarily and understandingly made and I recommend to the Court that the plea of "Guilty" be accepted and entered on behalf of the Defendant as requested in the foregoing Petition to Enter a Plea of Guilty and Plea Agreement.

## Part 12: Final Provision

28. **Complete Agreement:** The Defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the Defendant to plead guilty. This document is the complete and only Plea Agreement between the Defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the Plea Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

01 SEP 16
DATE

James M. Warden
Assistant United States Attorney

9.2.16
DATE

Winfield D. Ong
Chief, Criminal Division

8.26.16
DATE

Dwayne S. Peak
Defendant

8.26.16
DATE

Mario Garcia
Counsel for Defendant

17